IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

BILLY RAY MCCULLOUGH,

    Petitioner,

v.        CASE NO. 1:11-cv-237-MP-GRJ

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) The Petition stems from Petitioner's 2007 Alachua County convictions of one count of shooting into an occupied dwelling, three counts of aggravated assault with a firearm, and one count of possession of a firearm by a convicted felon, for which he was sentenced to two 15 year terms and three 20 years terms of imprisonment, to be served concurrently.[1] Petitioner supplemented his petition with a memorandum of case law (Doc. 15-1.), Respondent filed a response and an appendix with relevant portions of the state-court record, and Petitioner filed a reply. (Docs. 20, 24.)

For the following reasons, and upon due consideration of the Petition, the Response, the Reply, and the state-court record, the undersigned recommends that the

---

[1] Petitioner is also serving 6 year sentence for violation of probation in connection with a 2004 drug offense conviction.(Ex. E, at 335.)

Petition be denied.[2]

## State-Court Proceedings

On June 12, 2007, Petitioner was convicted of one count of shooting into an occupied dwelling, three counts of Aggravated Assault with a Firearm, and one count of Possession of a Firearm by a convicted felon.  At trial, the state demonstrated that on the afternoon of January 25, 2006, Petitioner, from inside a car, shot at three people standing outside of a home in Gainesville.  The shooting took place several hours after Petitioner had initiated physical confrontations with a one of the victims, and with a relative of one of the victims.  Additionally, only a few minutes before the shooting Petitioner drove by the house for the first time, trying to goad one of the victims into a fight, and uttering something about a gun. (Ex. C.)  At trial, two of the shooting victims testified and identified the Petitioner as the shooter.

The record on appeal may be summarized as follows.  Following his conviction, Petitioner appealed to the First District Court of Appeal contending that the trial court erred by denying his motion for judgment of acquittal and allowing the jury to consider aggravated assault as alleged in Count III, when the state failed to prove the required elements of that offense.  The First DCA affirmed the circuit court, per curiam. (Ex. H.)

Petitioner filed a state postconviction motion pursuant to Fla. R. Crim. P. 3.850,[3] asserting that his trial counsel rendered ineffective assistance (1) by failing to object to

---

[2] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

[3] Petitioner filed his first 3.850 motion on February 11, 2009 (Ex. I at 33.), but withdrew it on May 26, 2009.

*Case No: 1:11-cv-37-MP-GRJ*

*Williams* Rule evidence, (2) by failing to investigate and call witnesses, (3) by failing to object to prosecutorial misconduct, and (4) by failing to ensure the defendant's right to confrontation of witnesses, all in violation of the Fifth, Sixth and Fourteenth Amendments.  Additionally, Petitioner asserted that (5) based on the cumulative effect of trial counsel's error, he was denied a fair trial, due process and equal protection of the law, in violation of the Fifth, Sixth and Fourteenth Amendments. (Ex. K, 19-37.)  The postconviction motion was denied without an evidentiary hearing.  (Ex. K, 113-63.)  The First DCA affirmed the denial of relief in a per curiam decision.  (Ex. M.) Petitioner filed a motion for rehearing, which the First DCA denied. (Ex. N & O.)

The instant federal habeas corpus petition followed.  Petitioner asserts essentially the same five claims for relief as his 3.850 motion.  Petitioner relies on ineffective assistance of counsel as his federal claim, based upon counsel's: (1) failure to object to *Williams* Rule evidence; (2) failure to call witnesses; (3) failure to object to prosecutorial misconduct; (4) failure to ensure his right to confront witnesses; and (5) cumulative errors.  (Doc. 29.)  Respondent concedes that Petitioner has exhausted his state remedies as to each of these claims. (Doc. 20, at 23,27,32,34,35.)

## Standard of Review

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) imposes limitations on the scope of this Court's review.  Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow*, ___ U.S. ___, 134 S.Ct. 10, 15 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841(2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1); *see Burt*, at 15 (standard for reviewing claims of legal error by state courts is "highly deferential"). This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Id*.

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.  AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Id*. (quoting *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770, 786–787 (2011).  "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Id*. (quoting *Harrington*, 131 S.Ct. at 786).  "We will not lightly

conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Id*. (quoting *Harrington*, 131 S.Ct. at 786).

**<u>Review of Ineffective Assistance of Counsel Claims</u>**

This highly deferential standard of review carries special force in habeas cases asserting ineffective assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel under *Strickland*—a claim state courts have now adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Id*. (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35, 96 S.Ct. 3037 (1976).)

In reviewing a case in which a petitioner alleges ineffective assistance of counsel, the Court established a two part test- (1) was counsel's performance deficient or did it fall below an objective standard of reasonableness, and (2) did that deficiency prejudice the defense. *Strickland v. Washington*, 466 U.S. 668 (1984). Additionally, in a section 2254 petition, review of an ineffective assistance claim is doubly deferential to the state court determinations. The court looks at whether the state court's determination was unreasonable, not at whether or not it believes the determination. *Knowles v. Mirzayance,* 556 U.S.111, 123 (2009). The test for ineffectiveness of counsel does not require that Petitioner's counsel acted as the best lawyer may have acted. *White v. Singletary*, 972 F2d 1218, 1220 (11th Cir. 1992). The courts "must adhere to a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance." *Strickland*, at 689.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en banc). "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*.

**Ground 1: Ineffective Assistance of Counsel based on Williams Evidence**

Petitioner contends that trial counsel failed to object to inadmissable witness

*Case No: 1:11-cv-37-MP-GRJ*

testimony, *Williams* Rule evidence, concerning prior bad acts of the Petitioner. (Doc. 1.) *Williams* Rule evidence is not admitted if it is intended to discredit a party and is irrelevant to the crimes charged.  In ultimately rejecting this claim, the post conviction court held that the claim was without merit, because the testimony complained about was 'inseparable crime evidence,' rather than *Williams* Rule evidence[4] intended to discredit him.  Respondent contends that (1) this issue is one of state law, not federal constitutional law and therefore is not cognizable by a federal court, and (2) the evidence was admissible and therefore the claim is without merit.  (Doc. 20.)

Although Petitioner has brought this ground as a Sixth Amendment violation, at its center it involves a state court's interpretation and application of Florida law.  "In Florida, evidence of other crimes, wrongs and acts is admissible if it is relevant (i.e., it is probative of a material issue other than the bad character or propensity of an individual). Among the purposes for which a collateral crime may be admitted is establishment of the entire context out of which the criminal action occurred." *Hunter v. State*, 660 So.2d 244, (Fla.1995.) (Citations omitted.)  Issues of state law are not normally cognizable in a federal habeas proceeding.

"A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved. *Bronstein v. Wainwright*, 646 F.2d 1048, 1050 (5th Cir. Unit B June 1981). State courts are the ultimate expositors of their own state's laws, and federal courts entertaining petitions for

---

[4] *Williams* rule evidence is testimony or other evidence of other crimes, wrongs or acts of a defendant, intended to prove bad character or a propensity to act in a manner consistent with those acts

writs of habeas corpus are bound by the construction placed on a state's criminal statutes by the courts of the state except in extreme cases. *Mendiola v. Estelle*, 635 F.2d 487, 489 (5th Cir. Unit A 1981)." *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir.1992).

Additionally, even assuming that the ineffective assistance of counsel claim is sufficient to make the state law claim cognizable, Petitioner's claim is without merit. The post conviction court found that the testimony given at trial, concerning prior events, was properly admitted because it was relevant to the charged crime. The testimony in question described altercations between Petitioner and several other people, occurring the same day as the charged offenses. The post conviction court found that the testimony was relevant evidence admitted to establish the entire context out of which the criminal action occurred.

Upon review of the transcript, it is clear that the testimony demonstrated that Petitioner, earlier on the day of the shooting, picked fights with a victim of the crime, and relatives of the victims of the crime. (Ex. C at 40-43, 66-71, 99-104, 146-147.) Additionally, Petitioner did not present any evidence that rebuts the presumption that the court's findings were correct. Therefore, the court was reasonable in its determination that this testimony was inseparable crime evidence linked to the shooting, rather than *Williams* Rule Evidence. Petitioner cannot allege ineffective assistance of counsel for failure to object to admissible testimony; therefore Ground 1 has no merit.

***Ground 2: Ineffective Assistance of Counsel for Failure to Call Witnesses***

As his second ground, Petitioner contends that counsel was ineffective when he failed to call and investigate specific witnesses, in four separate instances, and that the post conviction court erred in finding that counsel was not ineffective. In the habeas corpus context, "[c]omplaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative." *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980).

First, Petitioner complains that the post conviction court was wrong when it stated that Petitioner's counsel was able to depose the victims and witnesses to the crime. Petitioner states that counsel informed him that none of the victims appeared for depositions, but told Petitioner that their failure to appear would work in his favor. (Doc.1, at 6.) Instead, according to Petitioner, counsel was blindsided by the testimony concerning Petitioner's earlier altercations. However, Petitioner has failed to provide clear and convincing evidence to rebut the conclusions of the court.

The record shows that trial counsel had the opportunity to depose witnesses. (Ex. K, 89-91.) As the post conviction court pointed out, the trial record shows that trial counsel scheduled depositions, received copies of witness statements, and ordered transcripts of the depositions. (Ex. K 84- 91).  Additionally, any decision to call or not call witnesses is well within the wide range of competent service that an attorney may provide.

Second, Petitioner claims that counsel was ineffective for failing to call Roderick

Wims, the target of the shooting, to testify. The post conviction court found that Petitioner did not make his concerns about Wims known to counsel ahead of time, and that even if Roderick Wims had testified in Petitioner's favor, the testimony would not have been credible. Therefore, it concluded, Petitioner was not prejudiced by the fact that Wims did not testify.

Petitioner alleges that the testimony of Wims would have been exculpatory, but again he presents no evidence of the exculpatory testimony. During the trial the prosecution presented testimony from two of the other victims, each of whom identified Petitioner as the shooter. (Ex. C at 44-48, 75.) Therefore, the post conviction court concluded that any contradictory testimony of Wims was not likely to be credible. If Wims' testimony was not likely to be credible, then Petitioner cannot claim that he was prejudiced by counsel's decision.

Third, Petitioner alleges that counsel was ineffective for failing to object to the introduction at trial of his sister's license plate number, without proper foundation. The post conviction court found that the evidence of the license plate number was properly introduced, through Sandresia Davis's testimony. Because it was properly introduced, the post conviction court concluded that counsel's failure to object to the license plate information was not ineffective assistance. The trial record supports the post conviction court's findings of fact, and shows that Ms. Davis, who was one of the targets of the shooting, testified to seeing the car, wrote down the license plate number, and called the police to give them the number. (Ex. C at 49-50.) Additionally, Petitioner's counsel had the opportunity to cross examine her about the finding of the plate number. Once

again, if the evidence was properly introduced, counsel's failure to object to it cannot be ineffective assistance.

Fourth, Petitioner believes that counsel was ineffective for failing to call petitioner's sister, Ebony McCullough, to testify that he did not use her car on the day of the shooting. He also objects to the court's determination that even if Ebony McCullough had testified and the jury believed her, it would not have changed the impact of the victims' identifications of Petitioner as the shooter. As a result of these factual findings, the post conviction court found that Petitioner was not prejudiced by any failure to call Ebony McCullough as a witness. The post conviction court concluded that even if she testified that she had her car throughout the day, the prosecution was able to present witnesses who identified Petitioner as the shooter, no matter what car he was in. Additionally, because none of the witnesses testified that they saw Petitioner in his sister's car, her testimony would not have contradicted the witnesses' testimony.

Petitioner has not provided clear and convincing evidence that rebuts the post conviction court's factual findings concerning any of these four claims. Therefore, on review, the presumption is that these findings are correct. Additionally, given these findings of fact, the conclusion of the post conviction court, that none of these additional witnesses would have changed the results of the proceeding, was reasonable.

The facts do not allow this court to find that no competent counsel would have made the choices that Petitioner's counsel made, or that but for counsel's lack of competence, the outcome of the trial would have been different. Petitioner has failed to show that the post conviction court's rejection of this claim was contrary to, or an

unreasonable application of *Strickland*.   Therefore, Petitioner's Ground 2 has no merit.

### Ground 3: Ineffective assistance for failing to object to Prosecutorial Misconduct

Petitioner next argues that trial counsel was ineffective due to his failure to object to four alleged instances of prosecutorial misconduct. First, as in Ground 1, Petitioner asserts that eliciting the alleged *Williams* Rule Evidence was misconduct, because *Williams* Rule evidence could not be admitted without providing notice to the defense. As discussed above, the court determined that the testimony in question was inseparable crime evidence and was properly admitted at trial as relevant evidence. Therefore, any objection to its admission as prosecutorial misconduct would have failed.

Petitioner alleges that the second misconduct occurred when the photo lineup cards, used and signed by to two non-testifying witnesses, were improperly admitted into evidence.  The court found that "There is no record of these items being admitted into evidence at trial. Defendant has apparently confused the placement of these items into the record as their being admitted into evidence."  Additionally, the court found that the jury did not look at these lineup cards.

Petitioner has not presented evidence demonstrating that these cards were in fact admitted into evidence or seen by the jury, and the trial record supports the court's conclusion.  Given AEDPA's strong presumption of correctness in the determination of facts by the post conviction court, and Petitioner's failure to present clear and convincing evidence to rebut that presumption, Petitioner has not demonstrated prosecutorial misconduct.  Therefore, counsel could not be ineffective for failing to

object to it.

Petitioner's third misconduct claim concerns testimony, elicited by the prosecution from Detective Joey Devereaux, concerning the apparent confidence of the witnesses who identified Petitioner as the shooter. Petitioner argues that counsel should have objected to the prosecution's improper bolstering of the witness's testimony.  The testimony in question was as follows:

> Q. Let me ask you one at a time: Was Mr. Roman able to identify the shooter?
> A. Yes.
> Q. Any hesitation in his identification?
> A. No, sir.
> Q. How confident did he appear?
> A. Very.
> .....
> Q. Same question: Was Sandresia Davis able to identify the person who had fired the shots at them from the lineup?
> A. Yes.
> Q. Any hesitation from her?
> A. No.
> Q. How confident did she appear?
> A. She appeared very confident.

(Ex. B, 108-109.)

Under Florida law bolstering of testimony to demonstrate the good character of a witness is not allowed unless the witness's character has been impeached by evidence. *Whitted v. State*, 362 So.2d 668, 673 (Fla.1978). "[A]llowing one witness to offer a personal view on the credibility of a fellow witness is an invasion of the province of the jury to determine a witness's credibility." *Knowles v. State*, 632 So.2d 62, 65–66 (Fla.1993). Moreover, "[i]t is especially harmful for a police witness to give his opinion of a witnesses' credibility because of the great weight afforded an officer's testimony." *Page v. State*, 733 So.2d 1079, 1081 (Fla. 4th DCA 1999).

The post conviction court concluded that the officer's testimony was not improper because it "merely indicated how the victims 'appeared' in making their identifications. He did not give his opinion as to the veracity of their identification. Thus, no bolstering occurred." (Doc. 20-3, at 44.) As demonstrated by the trial transcript, the post conviction court was not unreasonable in concluding that the detective's testimony did not go to the veracity or good character of the witnesses, but rather to the officer's impressions. Once again, Petitioner has not presented clear and convincing evidence that rebuts the presumption that the court's factual determination is correct.  And, if the testimony was not improper, the failure of counsel to object to it was not an error, nor could the failure to object prejudice the outcome of the proceeding.

Third, Petitioner alleges that the prosecution withheld exculpatory evidence – Roderick Wims' recanting of his identification of Petitioner as the shooter – from the defense, and that counsel was ineffective in failing to complain about the prosecution's behavior.  As the post conviction court stated, Petitioner has contradicted himself in making this argument.  In Ground 1, Petitioner argued that his counsel was ineffective for failing to call Roderick Wims, who Petitioner, one month before trial, believed had exculpatory testimony. "Petitioner did make his concerns known to counsel concerning witness and alleged victim Roderick Wims. As advanced, Petitioner spoke with counsel at least a month prior to trial concerning Wims [sic] exculpatory testimony." (Doc1, p. 7.)

The post conviction court found that Petitioner cannot allege that he discussed Wims' exculpatory testimony with counsel and simultaneously claim that the prosecution withheld that information from Petitioner. Nor can this court conclude that

either the court's finding was unreasonable or that the Petitioner was somehow prejudiced by the handling of Roderick Wims' statements.

Last, Petitioner again argues it was prosecutorial misconduct to improperly introduce his sister's license plate number, and that counsel was ineffective for failing to object to the misconduct. This claim is a restatement of Petitioner's third claim under Ground 2, and as discussed in detail above, Petitioner's argument fails.  The post conviction court found that the license plate number was properly introduced at trial. There was nothing unreasonable about the court's determination, and Petitioner did not present clear and convincing evidence to the contrary. Additionally, Petitioner has not demonstrated that counsel's failure to object to the introduction of the license plate prejudiced the outcome of the trial.

As the post conviction court found, all of the evidence and testimony complained about by Petitioner was presented properly, and not as a result of prosecutorial misconduct.  Petitioner cannot argue that counsel was ineffective for failing to object to testimony or evidence that was not objectionable.  Therefore, Petitioner's Ground 3 has no merit.

### *Ground 4- Ineffective Assistance of Counsel for Failure to Ensure Petitioner's Right to Confrontation*

In Ground 4, Petitioner restates his argument that counsel was ineffective for his failure to object to the introduction of photo line ups at trial and a car registration, and the testimony concerning Roderick Wims. This time, however Petitioner claims that counsel was ineffective for failing to protect Petitioner's constitutional right to confrontation of witnesses.

Although the focus of Petitioner's argument has changed, the conclusions do not change. First, as to Petitioner's complaint that he was not able to confront Roderick Wims and Tony Severance about the photo lineups that were allegedly given to the jury, the claim has no merit. The post conviction court previously concluded that these photo lineups were not introduced as evidence at trial, and therefore determined that the new claim was moot. Absent clear and convincing evidence to the contrary, this court can not find error on the part of the post conviction court.

Next, Petitioner argues that introduction at trial of the vehicle registration and testimony about his sister's car was improper without the testimony of its owner, Ebony McCullough. The court found that the registration was properly admitted to evidence under the business records exception to hearsay rules. (Ex. B, 121 & Ex. K, 61.)

Last, Petitioner claims that all of the testimony that concerned Roderick Wims, but was given by others, amounted to inadmissable hearsay. Once again, though, Petitioner fails to point to any specific evidence of inadmissible hearsay, or to provide other clear and convincing evidence of hearsay. The court found, and the record reflects, that all such testimony was admissible, therefore giving Petitioner's counsel no basis for objection. (*See. e.g.* Ex. C, 41, 43,46.)

Once again, Petitioner has not presented any facts to rebut the presumption that the post conviction court's determination of the facts is correct. As all of the testimony and evidence in question was properly admitted, counsel's failure to object is reasonable, and any objection would not have changed the outcome of the proceeding. Therefore, Ground 4 has no merit.

***Ground 5- Ineffective Assistance of Counsel based on Cumulative Error.***

Lastly, Petitioner alleges that the cumulative effect of trial counsel's errors amount to a deprivation of his constitutional right to effective counsel. The post conviction court rejected this claim, finding no error in any of the other grounds Petitioner raised and thus no cumulative effect. (Ex. K, 61.)

In rejecting a similar "cumulative error" argument made by a section 2254 petitioner, the Eleventh Circuit has stated "The Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim." *Forrest v. Fla. Dept. Of Corrections*, 342 Fed. Appx. 560, 564 (11th Cir. 2009)(*per curiam*). The *Forrest* panel noted "[h]owever, the Supreme Court has held, in the context of an ineffective assistance claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.'" *Id.* at 564-65 (quoting *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984)); *see also Spears v. Mullin*, 343 F.3d 1215, 1251 (10th Cir. 2003)("Because the sum of various zeroes remains zero, the claimed prejudicial effect of their [the petitioners'] trial attorneys' cumulative errors does not warrant habeas relief.")

As discussed above, Petitioner has not demonstrated that any of his trial counsel's alleged errors, considered alone, rose to the level of ineffective assistance. Therefore, there are no errors to accumulate and Petitioner was not denied effective assistance of counsel, nor has he demonstrated his trial was fundamentally unfair. *Walls v. McNeil*, No. 3:06-cv-237-MCR, 2009 WL 3187066, at *30-*31 (N.D. Fla. Sept.

30, 2009.)  Accordingly, Petitioner's last claim for relief has no merit.

In light of the foregoing, It is respectfully **RECOMMENDED** that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, (Doc.1.), should be **DENIED.**

**IN CHAMBERS** this 5th day of August, 2014.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**